## DARIUS C. BROWN *vs.* CITY OF LOWELL.

The ninth section of the act incorporating the city of Lowell, (*St.* 1836, *c.* 128,) did not entitle an owner of land adjoining a street in that city to compensation for damages sustained by the raising or lowering of the street: Damages in such case were first provided for by the Rev. Sts. *c.* 25, § 6.

Under the Rev. Sts. *c.* 25, § 6, the owner of land adjoining a highway or town way is not entitled to damages sustained by raising or lowering such way, until the act of raising or lowering it is done : In the city of Lowell, the application for damages, in such case, must be first made to the mayor and aldermen, as a board separate from the city council; and until their determination is made on such application, the county commissioners have no authority to issue a warrant for a jury to estimate such damages.

County commissioners cannot legally issue a warrant for a jury to estimate damages caused by the raising or lowering of a highway or town way, until they have caused formal notice of the application for a jury to be given to all parties interested ; and the verdict of a jury ordered without such notice must be disallowed.

THIS was a petition for the acceptance and confirmation of a verdict of a jury, awarding damages to the petitioner for injury sustained by him in consequence of the alteration of the grade of a public highway in Lowell, called Church Street.   The facts were these :

The city council of Lowell, on the 26th of July 1841, passed the following resolution :   " Resolved, that the grade or elevation of Church and Andover Streets, at their termination at Concord River, and the height of the bridge over said river, shall be hereafter established as follows; viz. commencing at a point on Church Street, four and a half inches below the top of the underpinning of D. C. Brown's house, on the west side of the river, and  terminating in a right line on Andover Street, ten feet and two and a half inches below the top of the underpinning of the brick house, late William Fisk's, now owned by the Middlesex Company, on the east side of the river.   And "

(among other damages) " one dollar shall be paid, if demanded, to D. C. Brown, provided said streets be raised to the grade herein established." Church Street was altered accordingly, except that, opposite to said Brown's house, it was not raised up to the height mentioned in said resolution. The work upon the street was finished early in June 1842, and on the 27th of that month the city council passed a further resolution, confirming and establishing the grade in conformity to the street, as actually finished. No further award of damages was made. In February 1842, the said Brown presented to the city council a petition for damages, on which, in August 1842, leave to withdraw was voted. At the meeting of the county commissioners, in January 1843, the said Brown presented a petition that a warrant might issue for a jury, to ascertain his damages by reason of the aforesaid doings; and in March 1843, at an adjournment of said meeting, such warrant was issued by said commissioners. No notice of said petition was given to the respondents, (the city of Lowell,) and they did not appear before the commissioners. On the 30th of May 1843, a jury was empannelled by the sheriff, and, after a full trial, a verdict was rendered for said Brown, for $160 damages.

At the trial before the sheriff, the respondents requested him to instruct the jury, as follows : " 1st. That the petitioner was not entitled to recover, because his petition was presented to, and acted on by, the county commissioners, after the time limited by law for the presentation of petitions, in such cases, for like purposes. 2d. That the respondents could not lawfully be held to answer to the process, because the petition was presented to, and acted on by, the county commissioners, without notice to the respondents." But the sheriff declined so to instruct the jury, and certified the fact accordingly, in his return.

The verdict was duly returned to the court of common pleas, in June 1843, and after a continuance, by consent, to the following term, in September 1843, the petitioner moved for the acceptance of said verdict. Objection being made by the respondents, the petitioner offered an affidavit of R. G. Colby

15 *

Esq., in which he stated that some of the city officers knew of the pendency of said Brown's application to the county commis sioners for a warrant for the empannelling of a jury. The court of common pleas ordered the verdict to be set aside, and the petitioner thereupon appealed.

This case was argued at a former term, by *Hopkinson*, for the appellant, and by *S. Ames*, for the appellees.

SHAW, C. J. One question, which was alluded to in the argument, and which it was supposed would arise and become material in the present case, was this ; whether the appellant's right, and his remedy for damage supposed to be done to his estate, by the act of the city in raising the grade of the street in front of it, would depend upon the provisions of the revised statutes, or the special act by which the city was incorporated. But we think, upon a careful consideration of the subject, that this question does not arise. We do not here allude to the point, whether the legislature have power to alter the provisions of an act incorporating the citizens of a limited territory, for municipal purposes ; for, whatever might be the doubt in other cases, in the act incorporating the city of Lowell, (*St.* 1836, *c.* 128, § 26,) the right is expressly reserved. But the question supposed to arise was, upon which of the acts of the legislature, supposing them rightfully made, the appellant's remedy depended. That a subsequent legislative act repeals all prior acts repugnant to it, is a principle which results from the unlimited nature of legislative power. The last expression of the legislative will must be carried into effect, as the law of the land ; and if, on its true construction, it is directly repugnant to any prior act, it necessarily annuls it, because both cannot exist together. But, to have this effect, it must appear that the legislative will was so exercised ; or, in other words, that it was the intention of the legislature, that the subsequent act should so operate, notwithstanding any repugnancy to former acts. It may happen that acts of special legislation may be made in regard to a place, growing out of its peculiar wants, condition, and circumstances ; as formerly various acts were passed in relation to the town of Boston. Afterwards, a general act may

be passed, having some of the same purposes in view, extending them generally to all the towns of the Commonwealth, with provisions adapted to the condition of all towns. It would be a question depending upon a careful comparison of the two acts, and the objects intended to be accomplished, whether the general act must be deemed an implied repeal of the special prior act. In general, we should think it would require pretty strong terms in the general act, showing that it was intended to supersede the special acts, in order to hold it to be such a repeal. But in the present case, had there been a more direct repugnancy, there is another difficult question, and that is, which act was prior, and which subsequent, in the sense in which the rule applies. The revised statutes were adopted and published in November 1835, to take effect on the 1st of May 1836. The act incorporating the city of Lowell was passed April 1st 1836, to take effect, on its adoption by the citizens of the town of Lowell, within fifteen days; so that it must have gone into operation before the 1st of May 1836. Although the revised statutes would not go into operation till May 1st 1836, yet it was competent for the legislature to repeal any part of them before going into operation, and in point of fact many of their provisions were altered and repealed in the winter session of 1836. Had there been an irreconcilable repugnancy, we are strongly inclined to think that the act of April 1st 1836, incorporating the city of Lowell, with a full knowledge, on the part of the legislature, of the provisions of the revised statutes, should be deemed a repeal of those statutes, *pro tanto*, rather than that the revised statutes, going into operation on the 1st of May, should be deemed to repeal an act passed after they were passed and published, and, by its terms, to come into operation before them. But we are satisfied that there is no repugnancy, because, until the revised statutes went into operation, there was no legal provision by which the appellant could have damages. In *Callender* v. *Marsh*, 1 Pick. 418, it was held that the loss sustained by a proprietor adjacent to a highway, by raising or reducing the surface of the road, that is, by grading it, was not an "alteration," for which the proprietor could claim damage; that it

was the legitimate exercise, on the part of the public, of their right and duty to make the way safe and convenient ; and if the adjacent proprietor sustained damage, it was *damnum absque injuriâ,* for which the law furnished no remedy   Although it was intimated by the court, in that case, that it would be equitable, in extraordinary cases of damage to coterminous proprietors, from changing the grade of streets, to make some allowance, yet no provision to that effect was ever made by the legislature, until the adoption of the Rev. Sts. *c.* 25, § 6, where the provision is new.   Indeed this provision was not reported by the commissioners, nor by the large legislative committee ; but it must have been introduced when the subject was before the legislature for its final adoption.

It was suggested, in the argument, that a like provision for damage to an abutter was made by the 9th section of the act incorporating the city of Lowell ; but we think otherwise.   That section enumerates the powers of the city council ; and among other things they are authorized to " cause any street or streets, public places or squares, in the city, to be *graded,* paved, macadamized, or repaired, and cause permanent sidewalks to be constructed on the same, at the expense-of abutters ; and cause drains, &c. to be laid down, and lay out, make and continue or discontinue all city and town ways and streets, widen or straighten county ways, within the city ; and any party aggrieved by such building of sidewalks, laying of drains, and alterations of ways, shall have the same remedies as are provided by law for the doings of county commissioners."   Here, a party is not to have a remedy when aggrieved by the exercise of either of these powers indiscriminately, but only in the specific cases enumerated, being in general the cases in which, as the law stood before, a party would be entitled to a remedy. The only one of these enumerated cases, within which the appellant, by any construction, could bring himself, would be that of an " alteration " of a way, to his prejudice.   But it was held, in *Callender* v. *Marsh,* that changing the grade of a street was not an " alteration," which entitled an abutter to damages. Nor can the right be derived from the provision authorizing the

city council to cause streets to be "graded." That power, to be exercised by the corporation or some of its officers, for the benefit of the public, existed before. In the case cited, it was held to be vested in surveyors of highways. The only change made in the act of incorporation was, in vesting the power to fix the grade of streets in the city council, instead of leaving it, under the general law, to be exercised by surveyors of highways. But the act, when done, affected the rights of abutters in the same manner, and gave them no new rights or claims. We are therefore brought to the conclusion, that until the revised statutes went into operation, in May 1836, the appellant had no claim for any damage done to his estate by altering the grade of the adjoining street. The case is then brought within the well known rule, that where a new right is conferred by statute, and a special remedy is provided, the special remedy must be pursued. 1 Met. 138, 139.

The provision in Rev. Sts. *c.* 25, § 6, is full and precise, both as to the right conferred and the remedy to be pursued ; and to understand it, the whole section must be referred to. It is thus : " When any owner of land, adjoining a highway or town way, in any town or city, shall sustain any damage in his property, by reason of any raising, lowering, or other act done for the purpose of repairing such way, the said owner shall have compensation therefor, to be determined by the selectmen of the town, or the mayor and aldermen of the city ; and if the owner shall be aggrieved by such determination of the selectmen, or mayor and aldermen, he may have his damages ascertained by a jury, in like manner as they are to be ascertained in the case of ₁aying out highways; and they shall allow, by way of set-off, the benefit, if any, which the complainant may receive by reason of such alteration or repair." Two things, we think, are observable in this provision. The *first* is, that damages may be awarded to one who shall sustain damage in his property by reason of any raising, lowering, or other act done for the purpose of repairing such way. It is the *act done*, we think, and not the vote contemplating a future act, that may never be done, which gives the claim for damage. There is,

in this respect, a manifest distinction between a vote to alter the grade of a way, and a vote or adjudication, laying out a way over private property. The latter appropriates the land to the public, and devests the right of the owner to the exclusive use and possession of it, from the time it is passed. *Harrington* v. *County Commissioners*, 22 Pick. 263. But the former is simply a declaration of purpose, by the trustees for the public, to use their own land in a particular way; but it does not affect the estate, or alter the condition of adjacent proprietors, until the act is done.

The *second* consideration upon this provision is, that the compensation is to be determined by the selectmen of the town, or the mayor and aldermen of the city, without regard to the consideration whether this act of fixing the grade is done by surveyors of highways, or mayor and aldermen, or city council, or otherwise. The provision, therefore, in the act incorporating the city of Lowell, that the city council shall have power to regulate the grade of streets, has no tendency to show that they have power to award compensation for damage thereby done. Nor can a party be deemed aggrieved, so as to warrant the county commissioners to award a jury to assess damages, until the mayor and aldermen have acted upon the claim for compensation; and this cannot be averred, until an application has been made to them, after the act done, for such compensation. Upon such an application, a compromise may be made, and compensation made by agreement, or a committee or arbitrators may be agreed on, and thus the expense of a jury avoided.

Under this view of the law, and upon the facts stated, it appears to us clear, that the county commissioners had no authority to grant a warrant for a jury, at the time, and under the circumstances; and that the decision of the court of common pleas, disallowing the verdict returned by the jury, must be affirmed.

The appellant was not an aggrieved party, within the meaning of this statute. The vote of the city council, passed in 1841, proposing to alter the grade of the street, was not an "act done," which could give him a claim to damages. The

vote, awarding him a compensation of one dollar, was of no avail, other than this; if the street had been graded according to the direction given by that vote, and the appellant had accepted the damage awarded, it might have been deemed an estoppel, or an accord and satisfaction, to bar a further claim. But that was not done.

After the vote of June 1842, by which the city council approved and affirmed the actual grading, which was less onerous to the appellant than the grade contemplated by the prior vote, no application was made to the mayor and aldermen for damages. We think an application to the city council, of which the mayor and aldermen are made a constituent branch, by the first section of the act incorporating the city, would not have been a compliance with the statute. On such petition, the mayor and aldermen might have voted him a compensation, and that vote been negatived by the common council. Could he have claimed the damages, or appealed from the decision to the county commissioners, as a person aggrieved by the determination of the mayor and aldermen? We think not. But, in truth, no application was made to the city council, after the vote of June 1842, by which the actual grading was confirmed. The vote of the council, giving the appellant leave to withdraw his peti tion, was a vote on a petition presented long before the vote of June 1842, and founded on the vote of the city council of 1841, on which he had no claim for damages. The appellant there fore was not an aggrieved party, within the meaning of the stat nte, who could apply to the county commissioners for a jury to assess his damages; and the county commissioners had no jurisdiction.

By the Rev. Sts. c. 25, § 6, there is no limitation prescribed in terms, within which an application must be made to the selectmen or mayor and aldermen. Whether there is such a limitation, by implication, by reference to the case of laying out highways, we give no ópinion. The case of *Goddard* v. *City of Boston*, 20 Pick. 407, was decided on the statutes, as they stood before the revised statutes.

Upon the other ground taken in the argument, that the

proceeding to grant a warrant for a jury, without notice to the respondents, was erroneous, the court are of opinion, that the proceedings were erroneous on that ground; and that, for this reason also, the verdict ought not to be affirmed; (7 Pick. 13; 15 Pick. 447;) and that this objection is not avoided by proof that some of the city officers in fact knew of the pendency of the application before the county commissioners. Formal notice should have been given, to enable the corporation to act by its proper officers. But though this would have been sufficient to dispose of the present appeal, yet it would perhaps leave the petition still before the commissioners, who, upon notice to the corporation, might issue another warrant, when the general question of the appellant's right might again arise. At the request of both parties, therefore, to avoid unnecessary expense, we have considered the question on both grounds.

The judgment of the court of common pleas, setting aside and disallowing the verdict, is affirmed.